James L. Weems, Pro Se
933 Empire Drive
Pasco, WA 99301
(509) 947-2133
psyweems@aol.com

FILED 08 MAR '12 11:29 USDC-ORP

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **JAMES L. WEEMS**<br><br>Plaintiff,<br><br>v.<br><br>**OREGON UNIVERSITY SYSTEM (OUS)**; George Pernsteiner, Chancellor; **OREGON DEPARTMENT OF JUSTICE (ODOJ)**; John R. Kroger, Attorney General;  and 1 to 10 John Doe OUS or ODOJ past/ present Attorney or non-attorney employees<br><br>Defendants. | Case No. CV '12 – 4 1 1 –     SU<br><br>**COMPLAINT**<br><br>An Independent Action in Equity for Relief From Summary Judgment Pursuant to the Fed.R.Civ.P., Rule 60(d)(3), and Violation of the Fourteenth Amendment of the Constitution of the United States of America, Denial of Property Rights Without Due Process of Law, 42 U.S.C. § 1983.<br><br>**JURY TRIAL REQUESTED** |

## INTRODUCTION

1.      This is an Independent Action in Equity in which plaintiff Weems is asking this Court to set aside a summary judgment granted in the Union County Circuit Court (Circuit Court of the State of Oregon for the County of Union), Cause No. 25782, dated January 25, 1980, because of external fraud upon the court pursuant to Fed.R.Civ.P. 60(d)(3), and to restore the property which is rightfully his as defined in the Fourteenth

page 1 - **COMPLAINT**

# 45855

Amendment of the Constitution of the United States of America (42 U.S.C. §1983), in which Plaintiff Weems was denied his property rights without due process of law.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction.

3.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 (b).

## PARTIES

4.      Plaintiff James L. Weems is currently a resident of Pasco, WA.   At all material times he was a resident of LaGrande, OR., and employed by Eastern Oregon State College (EOSC), now Eastern Oregon University (EOU), as a tenured Associate Professor of Psychology.

5.      Defendant Oregon University System (OUS), formerly the Oregon State Board of Higher Education, is an agency of the State of Oregon and is a public entity which is organized and operated under Oregon State law.

6.      Defendant George Pernsteiner is a resident of the State of Oregon, and Chancellor and chief executive officer of the OUS.

7.      Defendant Oregon Department of Justice (ODOJ) is an agency of the State of Oregon and is a public entity which is organized and operated under Oregon State law.

8.      Defendant John R. Kroger is a resident of the State of Oregon, and is the Oregon State Attorney General.

9.    Defendants John Doe 1 - 10 are or were, in part, attorney employees of the OUS and the ODOJ.  At all times material they were those Assistant Attorneys General, Associate Attorneys General, and Solicitors General, who were employed by the OUS and/or the ODOJ, and were assigned to represent OUS and ODOJ interests in the matter of  James L. Weems v. Rodney Briggs and the Oregon State Board of Higher Education in the Circuit Court of the State of Oregon for the County of Union lawsuit, in which James L. Weems was plaintiff, and Rodney Briggs and Eastern Oregon State College, and the Oregon State Board of Higher Education, were defendants.

10.    The remaining John Doe defendants were those officers, administrators, or agents of OUS or ODOJ who were in any way involved in the litigation cited in paragraph 9 both during the trial, or during the undefined period of time after the trial.

11.    Plaintiff Weems has for three years attempted to gain access to public records containing information which would enable him to identify the John Doe defendants in this action.  Their identities will become known during discovery, at which time plaintiff Weems will seek permission from the court to amend his complaint to make those defendants part of this complaint.


## GENERAL  ALLEGATIONS

12.    In June, 1978, then Eastern Oregon State College (EOSC) President Rodney Briggs declared a state of financial exigency at the college and eliminated the position that plaintiff Weems held as a tenured Associate Professor of Psychology.

13.    Over the course of the next two years plaintiff Weems challenged the legality of his termination in the Union County Circuit Court, and the Oregon Court of

Appeals (Trial Cause No. 25782, and Appellate Court No. CA16864).

14.    In that action EOSC and the State Board of Higher Education submitted pleadings and affidavits to the Union County Circuit Court, supporting Briggs' claim of financial exigency which had been used as the legal basis to terminate plaintiff Weems as a tenured Associate Professor of Psychology without probable cause.

15.    A motion for summary judgment filed by President Briggs and the State Board of Higher Education was granted by the judge of the Union County Circuit Court on January 25, 1980, and the motion for summary judgment was affirmed by the Oregon Court of Appeals on October 20, 1980.

16.    The motion for summary judgment filed in the Union County Circuit Court by defendants Briggs and the Oregon State Board of Higher Education targeted all of the issues raised by plaintiff Weems in his complaint:

       a.    Tort of Outrageous Conduct
       b.    Breach of Contract
       c.    Conversion
       d.    Writ of Mandamus

17.    Financial exigency was not included as a complaint issue because it was believed to be true.  Plaintiff Weems was attempting to defeat the termination in spite of the highly publicized financial emergency.

18.    Following the affirmation of the summary judgment by the Oregon Court of Appeals, plaintiff Weems felt alienated from the academic community for which he had prepared himself, and in which he had immersed himself, for more than twenty years, and moved to Seattle, WA.  His only contact with the academic community thereafter is and has been through the media.

page 4- **COMPLAINT**

19.    During the period of time following the affirmation of the summary judgment by the Oregon Court of Appeals (October, 1980), plaintiff Weems' attorney, F. E. Glenn, Boardman, Oregon, disappeared from his home and office for more than eight days.

20.    He was eventually located in his car in Ontario, Oregon.  His appearance was disheveled, he didn't know who or where he was, and he had no idea how he happened to be in Ontario, Oregon.

21.    He never practiced law again.

22.    In February, 2011, plaintiff Weems went to Mr. Glenn's home in Boardman, Oregon, the first such visit in more than thirty years, and asked him if he had ever been contacted by anyone from EOSC (now EOU), the State Board of Higher Education (now the Oregon University System [OUS]), or the Oregon Department of Justice (ODOJ), or from any of the assistant attorneys general, associate attorneys general, or solicitors general who had been involved in any way in the previously described action which concluded with the affirmation of the summary judgment ruling by the Oregon Court of Appeals on October 20, 1980.

23.    Mr. Glenn indicated that he had heard nothing from EOU, the OUS, or the ODOJ, nor from any of the attorneys involved, in the years since the 1980 affirmation of the summary judgment by the Oregon Court of Appeals.

24.    On December 10, 2008, while surfing the World Wide Web,  plaintiff Weems inadvertently discovered a paper written by an EOSC history student named Rachel Hawes, dated May 21, 2004.

25.    The paper was presented as a history of EOSC in the 1970's, and, among other things, suggested that President Briggs' 1978 claim of financial exigency at the college was not true.

26.    In the paper it was pointed out that the American Association of University Professors (AAUP) had investigated the claim of financial exigency, and had found it to be false.

27.    On the same date that plaintiff Weems discovered the student history paper on the World Wide Web, December 10, 2008, he sent a letter to defendant Chancellor Pernsteiner, requesting any public records that the OUS might have regarding Briggs' 1978 claim of financial exigency, or of any related events.

28.    Plaintiff Weems' request was ignored for six months and on June 29, 2009, a second request for public information was sent to defendant Chancellor Pernsteiner which was more in the form of a demand in keeping with plaintiff Weems' right to inspect the public records in question.

29.    The second correspondence and those that followed were met with an open ended demand for money, starting at $2500, which could become much more depending on the time it took for an OUS attorney to redact several thousand pages of documents.

30.    After at least seven attempts requesting those relevant public records regarding the 1978 claim of financial exigency that were in the control of defendant Chancellor Pernsteiner, and of those public records of related events which occurred after the claim of financial exigency, on July 12, 2010, plaintiff Weems filed a petition with the Oregon Attorney General for an order forcing the OUS to comply with the request for public information.

31.    After almost one year, the petition filed with the Oregon Attorney General met with a similar fate. There was no response to a final plea by plaintiff Weems to the Attorney Generals office to make available even one page of the admitted 2,200 documents they had initially located for his inspection, even if he were

to travel to Eugene, Oregon, to look at that one document.

32.    During the almost three year period of time in which plaintiff Weems' was trying to secure relevant public records, he contacted the American Association of University Professors (AAUP).

33.    He was informed that the AAUP had, in fact, done a thorough investigation of the Briggs claim of financial exigency at EOSC between 1980 and 1982.

34.    The results of that investigation demonstrated conclusively that there was not, nor had there ever been, a financial exigency at EOSC, nor a financial shortfall which approached what might be considered as serious even with the most generous measure.

35.    The financial exigency claim was fraudulent, and used by President Briggs to eliminate plaintiff Weems as a tenured professor who openly disagreed with his administrative style.

36.    It appears that President Briggs and other representatives from EOSC, in concert with an unknown number of John Doe defendant attorneys employed by the OUS and/or the ODOJ, communicated to the Union County Circuit, through pleadings, affidavits, and oral argument, that there was a financial exigency at EOSC which required President Briggs to terminate plaintiff Weems as a tenured Associate Professor of Psychology.

37.    The participation of the attorneys involved was contrary to their sworn duty requiring candor toward the court, without which the court was necessarily limited in its ability to avoid a miscarriage of justice.

38.    This false/fraudulent communication to the Union County Court was an unconscionable plan or scheme designed to improperly influence the court in its

page 7- **COMPLAINT**

decision, and by interfering with the judicial machinery itself, served to prevent a real trial upon the issues involved.

39.    The conspiratorial behavior exhibited by EOSC representatives, together with the OUS and/or ODOJ attorneys involved, served to deceive the Union County Circuit Court into accepting and believing the claim that there was a bonafide financial emergency at EOSC which, without any action taken, could place the institution at financial risk.

40.    Because the assistant attorneys general, the associate attorneys general, and the solicitors general involved in this action before the Union County Circuit Court were officers of the court, they had a duty to communicate to the court any information of which they were aware, or any information they acquired, which would have a bearing on any issue before the court, particularly if that issue, once known, was of such significance that it would have rendered every other issue in the lawsuit moot.

41.    In the event that the John Doe attorney defendants were unaware of the fraudulent nature of Briggs claim of financial exigency during the time of the trial, they most surely learned of the falsity of his claim in 1982 when the AAUP notified the Oregon State board of Higher Education of the results of their investigation.

42.    If the John Doe attorney defendants did not, in fact, learn of the fraudulent claim of financial exigency until 1982 when the AAUP reported the results of their investigation to the Oregon Board of Higher Education, their responsibility to report this new information to the Union County Circuit Court and the Oregon Court of Appeals, or to the attorney of plaintiff Weems, was in no way diminished, regardless of time passed.

43.    In this case the court, as well as plaintiff Weems and his attorney, were operating on the presented fact that there was a bonafide financial exigency at EOSC,

and they believed that fact to be true to the extent that it wasn't one of the issues raised by plaintiff Weems in his complaint or in his defense against the motion for summary judgment.

44.   Only the defendants were aware that the claim of a financial emergency at EOSC was fraudulent.

45.   Plaintiff Weems and his attorney, in 1979, accepted that the information presented to the court by the defense (that there was in fact a serious financial shortfall in the EOSC budget) was true, and subsequently, never considered financial exigency an issue in terms of attempting to get plaintiff Weems' termination reversed.

46.   The false communication to the Union County Circuit Court created a situation in which it would have been impossible for justice to have been achieved in that plaintiff Weems was, by definition, precluded from fully and fairly representing his case because the court had been deceived.

47.  In addition to losing his position as a tenured Associate Professor of Psychology, plaintiff Weems was put in a position where he had to use his PERS retirement funds and entire life savings in an attempt to argue against the claim of financial exigency used by the defense in his termination; a claim that was, unknown to plaintiff Weems, based in its entirety on fraud.

48.   As a result of the AAUP investigation, and as a direct result of the fraudulent claim of financial exigency, on June 21,1982, EOU was placed on the AAUP censure list.

49.   After seven years on the AAUP censure list, on June 14, 1989, following a full year of negotiations between EOU, the Chancellors office, and the AAUP, and after a declaration by the State Board of Higher Education that an event such as the false claim of financial exigency and the termination of tenured faculty would never again be allowed to occur, EOU was removed from the censure list.

page 9- **COMPLAINT**

50.   During these negotiations EOSC and the Chancellors office contacted, and offered to pay, and in fact, paid a cash settlement to another tenured professor who was terminated at the same time as plaintiff Weems and, still, the Oregon State Board of Higher Education found it unnecessary to contact plaintiff Weems regarding the fraudulent claim.

51.   Also as a direct result of the AAUP investigation President Briggs was terminated as President of EOSC.

a.   Rather than transparently announce that president Briggs had been terminated, or in some other way forced to leave, the Oregon State Board of Higher Education published articles in at least two newspapers stating that he had resigned his position as president of EOSC to accept a long coveted position as Vice President and Executive Director of a national agronomy society in Wisconsin.

b.   Nothing in the article released by the Oregon State Board of Higher Education suggested that President Briggs' departure was related to his fraudulent claim of financial exigency, nor that EOSC had, in fact, been placed on the AAUP censure list as a direct result of the fraudulent claim of financial exigency.

c.   The subterfuge engaged in by the Chancellor's office was a betrayal of the public trust, and concealed from plaintiff Weems, for thirty years, the knowledge that there had been a fraudulent claim of financial exigency at EOSC.

52.   It would appear that the Oregon State Board of Higher Education, and those defendants who will be later named, have been extraordinarily fortunate for thirty years in their attempts to shroud the fraudulent claim of financial exigency in secrecy so that it might work to their benefit, with little regard to the benefit of plaintiff Weems.

53.   In 1960, after four years of military service, plaintiff Weems was, for the first time, introduced to the academic community; a community that was so different

from anything he had ever experienced that he wanted nothing more than to become a part of it. Truthfulness, integrity, forthrightness, humility, collegiality, loyalty, service, honesty, vision, citizenship and purpose were traits he thought he perceived and would have to aspire to in order to earn something like academic tenure. There were apparently some traits existing in academia he overlooked.

## FIRST CLAIM FOR RELIEF

### Against the John Doe Attorney Defendants Employed by the Oregon University System and/or the Oregon Department of Justice Who, in Violation of Rule 60(d)(3) of the Fed.R.Civ.P., Committed External Fraud upon the Court

54.    Plaintiff re-alleges and incorporates paragraphs 1 through 53 above.

55.    Those attorneys who were in the employ of the OUS and/or the Oregon DOJ between 1979 and the present, and were in any way involved with or knew about the false and fraudulent claim of financial exigency at EOSC in 1978, and failed to report that false and fraudulent claim to the Union County Circuit Court in LaGrande, Oregon, are guilty of committing external fraud upon that court.

56.    The fraud referenced herein is not a fraud between plaintiff Weems and defendants Rodney Briggs and the Oregon State Board of Higher Education; not a simple nondisclosure to the court of facts allegedly pertinent to the matter, but is extrinsic fraud directed toward the judicial machinery itself.

57.    In so much as that fraud upon the court caused the Union County Circuit Court to accept a motion for summary judgment against plaintiff James L. Weems, and in favor of defendants Rodney Briggs and the Oregon State Board of Higher

page 11- **COMPLAINT**

Education, it represents a gross miscarriage of justice, and is not subject to **any** time constraint which would prevent or otherwise interfere with plaintiff Weems in terms of filing a complaint against the defendants pursuant to Rule 60[d](3) of the Fed.R.Civ.P.

58.    As a direct result of defendants external fraud upon the court, the Union County judicial system was deceived into finding for the defendants and against plaintiff Weems following arguments for and against the motion for summary judgment; arguments that were absent any pleading or argument regarding financial exigency whatsoever because it was assumed to be true, leading to a gross miscarriage of justice.

59.    As a direct result of that gross miscarriage of justice, plaintiff Weems has suffered lost income and benefits, retirement benefits, and prejudgment interest, over a period of more than thirty years, all to his economic detriment, in an amount to be determined at trial.

60.    As a direct result of defendants malicious fraud upon the court, plaintiff Weems has suffered loss of status in the eyes of his family, damage to his professional reputation, embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss of enjoyment of life for more than thirty years and is entitled to an award of compensatory damages in the amount of $l,500,000.

## SECOND CLAIM FOR RELIEF

**Against Defendants Oregon University System and George Pernsteiner, Chancellor; and the Oregon Department of Justice, and John R. Kroger, Attorney General; a Violation of the Fourteenth Amendment of the Constitution of the United States; 42 U.S.C. § 1983**

61.    Plaintiff re-alleges and incorporates paragraphs 1 through 53 and 54

through 60 above.

62.     The defendants referenced above, and their predecessors, who will be made a part of this complaint upon being identified, who with reckless and wanton disregard for plaintiff Weems' well established right to enjoy those privileges of the academic tenure he had earned and to which he was entitled, fraudulently conspired to publicly remove him from his position as tenured Associate Professor of Psychology, thereby violating his Fourteenth Amendment right to due process, 42 U.S.C. § 1983.

63.     In the event there was not a conspiracy and president Briggs acted alone in the declaration of financial exigency, and, in fact, deceived those OUS/ODOJ attorney employees acting as his legal representatives into believing that there was a financial emergency, those same attorney employees did, in fact, learn that the claim was fraudulent when they received notification of the results of the AAUP investigation in 1982 .

64.     Upon such notification, the defendant attorneys' responsibility to report the fraud to the court did not in any way diminish.

65.     The doctrine of equitable relief holds that where judgments are entered and there is after-discovered fraud, relief will be granted regardless of their term of entry, but the court can do nothing unless it in some way learns of the deceit.

66. Plaintiff Weems has been deprived of his right to due process and alleges:

        a.      a judgment was entered against him which ought not, in equity and good conscience, be enforced because of fraud on the court;

        b.      he has a good defense to the cause of action on which the

page 13- **COMPLAINT**

summary judgment was founded;

c.    he was prevented by fraud from obtaining the benefit of his
defense in the summary judgment decision;

d.    he was not at fault or negligent in any way or circumstance which
led to the granting of the summary judgment, and;

e.    he has no adequate remedy at law to seek redress from the
consequences of the fraud.

67.    As a direct result of defendants fraudulent behavior which deprived
plaintiff Weems of his right to due process, he has suffered lost income and benefits,
retirement benefits, and prejudgment interest, over a period of more than thirty years,
all to his economic detriment, in an amount to be determined at trial.

68.    A further result of losing his right to due process has caused plaintiff
Weems to suffer loss of status in the eyes of his family, embarrassment, anxiety,
humiliation, anger, emotional distress, inconvenience, irreparable damage to his
professional reputation, and loss of enjoyment of life. He is subsequently entitled to an
award of compensatory damages in the amount of $1,500,000.

## CLAIM FOR PUNITIVE DAMAGES

69.    Plaintiff re-alleges and incorporates paragraphs 1 through 53,  54
through 60, and 61 through 68 above.

70.    To plaintiff Weems' knowledge he and his family are the only ones to
have been directly harmed by the fraud perpetrated on the court by the defendants,
which does not diminish the courts responsibility to correct this gross miscarriage of
justice, especially in view of the fact that the fraud engaged in by the defendants has
been perceived as so unconscionable that there are no time limits imposed by rule or

page 14- **COMPLAINT**

law which would prevent redress.

71.    The defendants, including the John Doe defendants, in total disregard of plaintiff Weems' professional, legal, moral, and constitutional rights, successfully conspired to deprive him of his life's work, and the privileges and rewards that should have accrued thereof, and have continued this fraudulent and illegal conspiracy for more than thirty years.

72.    Plaintiff Weems did nothing wrong other than to exercise his rights as a tenured Associate Professor of Psychology when he resisted President Briggs' abrasive administrative style as he ran rough shod over the EOSC academic community.  Plaintiff Weems, in fact, perceived that resistance to be his professional duty.

73.    In that regard, and to the extent allowed by law, in an amount to be determined by trial, plaintiff Weems is asking for punitive damages against each one of the agencies and each and every agency defendant for the callous and malicious disregard of his individual rights, and the willingness to shroud the resultant unprofessional and illegal behavior in a veil of secrecy for  three decades.

WHEREFORE, plaintiff Weems prays for judgment against defendants as alleged in the claims above.

DATED this 6th day of March, 2012.

James L. Weems Pro Se
933 Empire Drive
Pasco, WA 99301
(509) 947-2133
psyweems@aol.com

page 15- **COMPLAINT**