James L. Weems, Pro Se
933 Empire Drive
Pasco, WA 99301
(509) 947-2133
psyweems@aol.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **JAMES L. WEEMS** | Case No.  2:12-cv-00411-SU |
| Plaintiff, | |
| **v.** | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |
| **OREGON UNIVERSITY SYSTEM (OUS);** George Pernsteiner, Chancellor; **OREGON DEPARTMENT OF JUSTICE (ODOJ);**  John R. Kroger, Attorney General;  and 1 to 10 John Doe OUS or ODOJ past/ present Attorney or non-attorney employees | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## STIPULATED DISMISSAL WITH PREJUDICE

On May 14, 2012, plaintiff Weems and Defendants Attorney General John Kroger and the Oregon Department of Justice, entered into a Stipulated Dismissal with Prejudice, a copy of which has been filed with the Court.

Plaintiff James L. Weems, who opposes the defendants' motion to dismiss or for summary judgment, respectfully submits the following:

## I.  INTRODUCTION

Plaintiff pro se James L. Weems has filed a complaint with this Court seeking relief from a summary judgment obtained by the defendants in the Union County Circuit Court in LaGrande, Oregon, on January 25, 1980, and which was confirmed by the Oregon Court of Appeals on October 20, 1980.  Specifically, it is intended that this claim is an independent action in equity, and alleges a violation of Fed.R.Civ.P. 60(d)(3).  The defendants, including the attorneys representing them, deceived the Union County Circuit Court, which had the effect of improperly influencing that Court's decision and  prevented plaintiff Weems from fully and fairly presenting his case.  The Fed.R.Civ.P. 60(d)(3) violation resulted in a gross miscarriage of justice.  Specifically, plaintiff Weems' complaint contends that the judgment was obtained when defendants Rodney Briggs and the Oregon State Board of Higher Education, through their attorney or attorneys, deceived  the Union County Circuit Court into believing that there was a financial exigency at Eastern Oregon State College which necessitated the termination of Plaintiff Weems' position as a tenured Associate Professor of Psychology.  Plaintiff Weems further claims that his fourteenth amendment property rights were denied without due process of law as a result of the fraud perpetrated on the Union County Circuit Court.  In response, Defendants George Persteiner and the Oregon University System (OUS) have moved for summary judgment or for dismissal of plaintiff Weems' complaint pursuant to Fed.R.Civ.P. 12(b)(1)(6).

## II.  FACTS

Defendants' in their Memorandum in Support of Motion to Dismiss, (¶ I) state:

> Plaintiff was terminated from his job at Eastern Oregon State College thirty four years ago.  Now, a generation later, after the state courts have long since rejected his claims, he attempts to revive his litigation in this forum, alleging fraud and due process violations.

In reading this factual statement one might conclude that plaintiff Weems did not pursue a legal remedy thirty four years ago because his interests were elsewhere. Or that it took these many years for this matter to work its way up the plaintiff's list of priorities.

To make these assumptions would be in error. Plaintiff Weems was unaware that Briggs had made a fraudulent claim of financial exigency until December 10, 2008. On that date, while reading various university histories on the world wide web, plaintiff Weems accidentally discovered the Rachel Hawes senior thesis referred to by the defendants. Motion to dismiss ¶ II.

On that same date plaintiff Weems wrote a letter to George Persteiner, Chancellor, Oregon University System, seeking clarification of the information contained in the Hawes thesis. A copy of that letter is attached as Exhibit 1. To date there has not been a response to that letter.

In total, plaintiff Weems wrote nine letters to the chancellor or his representatives trying to make sense of the claim of financial exigency. The chancellors office stonewalled every attempt made by plaintiff Weems to access the public records they had in their possession, and to which he had a right to inspect.

In frustration, plaintiff Weems, on October 23, 2009, again wrote to the chancellors office and presented a list of 15 facts he had inferred from the material he had received from the Oregon courts and the American Association of University Professors (AAUP). Plaintiff Weems requested that the chancellors office review those 15 facts and correct any errors. That letter is attached as Exhibit 2. In the letter it is pointed out  that these were facts regarding the financial exigency issue, and that Plaintiff Weems would assume them to be true in their entirety if they chose not to respond. To  date, there has been no response. Plaintiff Weems further pointed out that he would take appropriate action if they chose not to respond.

If the October 23, 2009 letter to the chancellor naming the 15 facts surrounding the financial exigency does not become a part of this document by attaching it as Exhibit 2, plaintiff Weems requests that the letter be incorporated by reference.

## III  LEGAL  STANDARD

Defendant's generally accept facts alleged by plaintiff Weems, but point out that allegations of fraud must be plead with particularity.  Plaintiff Weems refers the Court to the Complaint which states in detail the nature of the fraud on the court, and certainly those pleadings (see Exergen Corp. v. Wal-Mart Stores, Inc. 575 F.3d 1312,1327 [Fed. Cir. 2009]) allege sufficient underlying facts from which a court may reasonably infer that the defendants did, in fact, deceive the Union County Circuit Court in 1980. Complaint  ¶34-42.

The defendant's further point out that a "complaint may be dismissed for two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory".  Memorandum in Support of Motion to Dismiss, ¶ III. Referring to the factual history cited above, it is clear that pursuant to Fed.R.Civ.P. 60(b)(3) and 60(d)(3) the court may relieve a party from a final judgment based on fraud or fraud on the court (State Street Bank & Trust Co. v. Inversiones Effazuriz Limitada, 374 F.3d. 158, 176 (2d Cir. 2004; Entral Group, 298 Fed Appz. at 44; Atkinson v. Prudential Prop. Co. Inc., 43 F. 3d. 367, 372-73 (8th Cir. 1994.)  The factual history cited in the Complaint and in this document more than meet the requirements needed to form a cognizable legal theory, and provide sufficient facts under a cognizable legal theory so that the court can determine that the defendants did, in fact, deceive the Union County Circuit Court.

## IV  ARGUMENT

Defendants cite the Rooker-Feldman doctrine as reason this Court should dismiss plaintiff Weems' claim for relief from a summary judgment in the Union County

Circuit Court pursuant to Fed.R.Civ.P. 60(d)(3), and for his claim that he was denied his property without due process of law in violation of his 14th amendment rights under the Constitution of the United States of America. In short, the defendants correctly point out that the federal district courts cannot be used as appeal courts for decisions made in state courts. They cite the four part test used to determine whether a suit may continue in the face of a Rooker-Feldman challenge. Memorandum in Support of Motion to Dismiss, ¶ IV,A. Generally, it was stated that if a claim is inextricably intertwined, the claim cannot be addressed in federal court unless the "plaintiff did not have the opportunity to raise the issue in state court proceedings." Brokaw, 305 F.3d. at 668 (citing Long, 182 F.3d. at 558). It is clear that the plaintiff did not have an opportunity to raise the Fed.R.Civ.P. 60(d)(3) issue before the state court in 1980. That opportunity did not exist because an officer of the court, to be named during or after the discovery process, intentionally withheld information from the court which would have altered the court's decision. In Exxon Mobil v. Saudi Basic Industries Corp.,544 U.S. 280 (2005), the Court determined that the Rooker-Feldman doctrine does not apply where an independent action is claimed; where the issue is not the conflict between parties but has to do with the judicial machinery itself. Such is the case in the present claim.

Additionally, there is a Fourteenth Amendment claim which must be litigated in Federal Court because that is where the constitutional responsibility lies. See the **Constitution of the United States of America, 14th Amendment. Section I:**

> . . . . . . . No State shall make or enforce any law which shall abridge the **privileges and immunities** of citizens of the United States; nor shall any States deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The constitution does not say "to any person within the jurisdictions thereof"

which would imply that jurisdiction would lie within each of the states. The reference is to a singular jurisdictional body, the United States Government. In this instance, it is a federal question jurisdiction conferred upon this Court by 28 U.S.C. § 1331. <u>The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.</u>

Defendant correctly identified plaintiff Weems' allegations of fraud in the state court litigation, and that his contention was there was not a financial exigency sufficient to revoke his contract. Defendant further pointed out that plaintiff Weems asked for money damages in his first claim for relief. Plaintiff Weems acknowledges this error, and will seek permission to amend his complaint to remedy this mistake and others as he becomes aware of them.

Defendants pointed out that a motion for relief under Fed.R.CivP. Rule 60 asserting fraud as a basis must be made within one year of the entry of the judgment, not thirty-two years. They failed to point out that a fraud on the court pleading a Fed.R.Civ.P. 60(d)(3) violation is not time barred. Bowie v. Maddox, No. 03-948, 2010 WL 45553, at 2,__F.Supp.__,__(D.D.C.2010).

Defendants also state that the agencies named in this lawsuit are immune from suit because of the 11th Amendment. It is generally considered that if an agency is an "arm of the state" they can claim 11th Amendment immunity, and if they are a local government entity they are not. See Chisolm v. McManimon, 275 F.3d 315 (3d Cir. 2001, Reiff v. Philadelphia County Court of Common Pleas, 827 F. Supp. 319,324 (E.D.Pa. 1993, and Clark v. Tarrant County, Texas, 92 F.2d 736,744-745 (5th Cir. 1986).

With the Department of Justice Dismissed, it only needs to be determined whether the Oregon University System (OUS) has 11th Amendment immunity. They do not. They, and the nine University members are more a local government entity

the state". Further, Senate Bill 242 has ended state agency status for the OUS. By definition, the OUS is now defined within the bill as a "Public University System" rather than a "state agency".

## IV  CONCLUSION

The list of undisputed facts found in Exhibit 2 are as follows:

(1)     In 1978 Eastern Oregon State College president Rodney Briggs declared a financial exigency at the college that required a reduction of tenured staff.

(2)     In 1979-60 President Briggs, together with then Academic Dean David Gilbert, submitted statements of fact and sworn testimony to the Union County Circuit Court and the Oregon Court of Appeals that further supported the 1978 claim of financial exigency at EOSC.

(3)     In 1980 the Union County Circuit Court granted summary judgment to Defendants EOSC and the State Board of Higher Education in a lawsuit brought by this writer challenging the legality of his dismissal based on the claim of financial exigency (changed plaintiff-defendant status as correction).

(4)     In 1981 the Oregon Curt of Appeals found for the defendants and against the defendant in the same lawsuit (changed plaintiff-defendant status as correction).

(5)     In 1982, the AAUP completed a nearly two year investigation in which it was found that there had not been a financial exigency at EOSC in 1978.

(6)     President Briggs' claim of financial exigency was an attempt to deceive, and was made in an effort to circumvent probable cause requirements.

(7)     To date, the Oregon courts have not been informed that the 1978 claim of financial exigency at EOSC was fraudulent; a false premise upon which the findings for EOSC and the State Board of Higher Education and against this writer were based.

(8)     As a direct result of President Briggs' fraudulent claim of financial exigency, the AAUP placed EOSC on their censure list for seven years.

(9)     In 1982, following the AAUP finding of no financial exigency at EOSC, and the notice that EOSC was being placed on the censure list, it was

announced that President Briggs was being replaced.

(10)    President Briggs' departure was directly related to the AAUP finding of no financial exigency at EOSC, and the placement of EOSC on the AAUP censure list.

(11)    Neither Eastern Oregon University nor the Oregon University System, to date, has made any effort to notify the public regarding the false claim of financial exigency, nor of their successful efforts to promote the legitimacy of that false claim in the Oregon Courts.

(12)    In 1989 EOSC (EOU) was removed from the AAUP censure list following nearly year long negotiations between AAUP members, EOSC officials, and a representative from the Chancellor's office. During those negotiations EOSC and the Oregon University System agreed to an official interpretation of the system's rules that bring the criteria in line with the AAUP <u>Recommended Institutional Regulations on Academic Freedom and Tenure</u>, and reestablished the long held agreement that the Oregon University System would continue to remain in compliance with the 1940 AAUP recommendations regarding financial exigency.

(13)    AAUP staff discussions between EOSC and the Oregon University System also led to agreement of redress in the case that led to the censure, and a financial settlement was offered and accepted.

(14)    Again, no effort has ever been made to publicize the extent to which the fraudulent claim of financial exigency disrupted the institutions involved, nor of the damage it caused to the individuals who were effected. Too, keeping this information from the public denied effected individuals the opportunity to respond.

(15)    To date, the Chancellor's office has taken no action to remedy the damage caused by President Briggs' fraudulent claim of financial exigency.

Fed.R.Civ.P. 60(b)(c)(d), in part, states:

(b) *Grounds for Relief from a Final Judgment, Order, or Proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1)  mistake, inadvertence, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b):

(3) fraud (whether intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) *Timing and Effect of the Motion.*

(1) Timing. A motion under Rule 60(b) must be made within a reasonable time - and for reasons (1), (2), and (3) no more that a year after the entry of the judgment or order or the date of the proceeding.

(2) Effect of Finality. The motion does not affect the judgment's finality or suspend its operation.

(d) *Other Powers to Grant Relief.* This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order or proceeding;

(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not notified of the action; or

(3) set aside a judgment for fraud on the court.

Right or wrong, good or bad, Fed.R.Civ.P. 60(d)(3) provides a mechanism by which an aggrieved individual is provided the opportunity to remedy a wrong, a concept which is at the very core of the American constitutional government. Faria v. San Jacinto Unified Sch. Dist., 50 Cal. App. 4th 1939, 59 Cl. RPTR 2d 72, 77 (1996); Sanzone v. Board of Police Comm'rs, 219 Conn. 179, 592 A.2d 912. 921 (1991);

Burns v. Burns, 518 So. 2d 1205 (Miss. 1998). The concept as been recognized by, among others, Blackstone, who noted:

> It is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law whenever that right is invaded (William Blackstone, <u>Commentaries on the Laws of England 23.</u>)

The essential elements of remedying a wrong are to undo the injurious effects of the wrong, keeping in mind that it is not the injury that gives rise to the remedy, but the legal wrong. Lowery v. Mountain Top Indoor Flea Mkt., Inc., 699 So. 2d 158, 161 (Ala. 1997) (noting that "the law doesn't say for every injury there is a remedy. It says for every wrong there is a remedy") [citation omitted].

In this case plaintiff Weems is entitled to redress the wrong created by Briggs' fraudulent claim (which eventually had the effect of ruining his own life as well as that of plaintiff Weems) by creating a situation, as nearly as possible, which would have existed had the wrong not occurred. Alberma Paper Co. v. Moody, 422 U.S. 405, 413-25, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975), Milliken v. Bradley, 433 U.S. 267, 280, 97 S. Ct. 2749, 53 L.Ed. 2d 745 (1977).

The Fed.R.Civ.P. 60(d)(3) violation was a fraud on the court because the counsel for defendants deceived the court into believing that EOSC was under financial stress. The attorney or attorneys who perpetrated that fraud, or who learned at a later date that the information was fraudulent, had a duty to the court to inform them of the fraud. Because there is no statute of limitations on this kind of fraud, there is no amount of time that can pass which would relieve counsel for the defendants of that duty. Plaintiff Weems sincerely likes to believe that if he were in the situation defense counsel finds itself in, even at this late date, he would show up at the Union County Circuit Court and say to the judge, "Your Honor, we have a problem."

The particular remedies plaintiff Weems is seeking are:

(1)  having a summary judgment overturned because of fraud on the court.

(2)  returning the property that was illegally taken from him under the Fourteenth Amendment.

Plaintiff Weems is aware that the complaint he has filed is flawed.  It is the first one he has ever written.  At the same time it is obvious that there was, in fact, a fraudulent claim of financial exigency, that the Union County Circuit Court was deceived into believing that EOSC was under financial stress, that this was a fraud on that court, and that there is no statute of limitations which would bar plaintiff Weems from seeking redress.

Whenever plaintiff Weems discovers a technical flaw in his complaint, or when he is made aware of same, he will seek this Court's permission to amend.

On page (7)[6] of defendants Memorandum in Support of Motion to Dismiss, they state:

> Any of the legal personnel involved here should, regardless, not be held in this action on the basis of "fraud," as this Court can determine on the face of the complaint that there was no fraud.The sole allegation in that regard is that there was no "financial exigency."  Complaint ¶¶ 33, 34.  Certainly, how serious a financial situation is should be considered a subjective matter, and it cannot be credibly contested that Oregon was in a serious recession in the late 1970s and early 1980s.

That "it cannot be credibly contested that Oregon was in a serious recession in the 1970s and early 1980s" is categorically untrue.  It is a sad irony that now, 34 years after the fact, counsel for the defendants is once again trying to convince, not the Union County Circuit Court, but this Court, that there really were financial problems at EOSC regardless of what the record indicates, and that plaintiff Weems' termination was, in some way, justified.  It is categorically untrue that EOSC was under any kind of financial pressure whatsoever, and that President Briggs' used the fraudulent claim of

financial exigency to terminate plaintiff Weems because he didn't like him and felt threatened by him. All these years, Briggs has been publicized as a savior and a wonderful administrator. The records so carefully hidden by the Chancellor's office for thirty years will show something quite different. Those records, records that plaintiff Weems has been trying to see for more three years, will show that Briggs was a small little man who enjoyed the power he was given and wanted more. He caused significant damage to the Oregon University System and very nearly destroyed Eastern Oregon State College.

Under Federal Rule 12(d)(6), the Court must deny the Defendants' motion to dismiss unless it can demonstrate "beyond doubt that [Plaintiff] can prove no set of facts in support of [his] claim that would entitle [him] to relief", Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997). In making this determination, the Court must also "accept the factual allegations in [plaintiff Weems'] complaint and must construe those facts in the most favorable light to the [plaintiff]", Id. As demonstrated in Plaintiff's Opposition to Motion to Dismiss, it is clear that the Defendants' motion cannot survive the application of these standards.

This action should not be dismissed.

DATED May 30, 2012

Respectfully submitted,

James L. Weems
933 Empire Drive
Pasco, WA 99301
(509) 947-2133
psyweems@aol.com

## CERTIFICATE OF SERVICE

I certify that on May 30, 2012, I served the foregoing PLAINTIFF'S

OPPOSITION TO MOTION TO DISMISS upon Counsel for Defendants George

Persteiner and the Oregon University System by the method indicated below, and

addressed to the following

Baum, Smith & Eyre LLC         ___HAND DELIVERY
Brent H. Smith                 _X_MAIL DELIVERY
1902 Fourth Street             ___OVERNIGHT MAIL
P.O. Box 967                   ___TELECOPY (FAX)
LaGrande, OR 97850             ___E-MAIL
                               ___E-File


James L. Weems pro se
933 Empire Drive
Pasco, WA 99301
(509) 947-2133
psyweems@aol.com